**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **GEORG GARNITSCHNIG,** | * | |
| **Plaintiff,** | | |
| **v.** | * | **Case No.: PWG-12-774** |
| **ZOLA P. HOROVITZ, et al.** | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff has brought derivative claims and class claims on behalf of a Delaware corporation and its shareholders against certain directors and officers, alleging that the board of directors made awards that exceeded the limits of a shareholder-approved compensation plan. The company has moved to dismiss under Fed. R. Civ. P. 23.1 for failure to make a demand on the board to redress the wrongs alleged in the Complaint, and the individual Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b). Because I find that Plaintiff adequately has pleaded that the board exceeded its authority and a majority of the board received the challenged awards, I find that demand is excused in this case. Further, because Plaintiff adequately has alleged all but one of his claims, I deny both motions to dismiss with respect to those claims.[1]

_____

[1] This Memorandum Opinion and Order disposes of (1) Defendant GenVec, Inc.'s Motion to Dismiss, ECF No. 35, and supporting Memorandum ("GenVec Mem."), ECF No. 35-1; Plaintiff's Opposition, ECF No. 36; and GenVec's Reply, ECF No. 40; and (2) Defendants Zola Horovitz, Paul Fischer, Wayne Hockmeyer, William Kelley, Kevin Rooney, and Marc

## I.    BACKGROUND

For the purposes of considering Defendants' motions to dismiss, this Court accepts the facts that Plaintiff has alleged in his Amended Verified Complaint as true.  *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).  GenVec, Inc. ("GenVec" or the "Company"), a Delaware corporation headquartered in Maryland, Am. Compl. ¶ 12, ECF No. 11, "is a biopharmaceutical company that researches and develops therapeutic drugs and vaccines," Compl. ¶ 2, ECF No. 1. As documented more thoroughly in Judge Williams's earlier Memorandum Opinion in this case, Mem. Op. 1–2, ECF No. 23, GenVec's stock dropped significantly after the 2010 announcement that it would discontinue clinical trials on its "leading product candidate," prompting multiple lawsuits in this Court.  After Chief Judge Chasanow dismissed a related securities class action, *see Shah v. GenVec, Inc.*, No. DKC-12-0341, 2013 WL 5348133 (D. Md. Sept. 20, 2013), Plaintiff Georg Garnitschnig amended his complaint to abandon his earlier claims and, instead, allege an entirely new set of claims that have arisen since the original complaint was filed.  *See* Redlined Compl., Am. Compl. Ex., ECF No. 11-6.

### A.  The 2011 Omnibus Incentive Plan

On April 21, 2011, GenVec's board of directors (the "Board") approved a 2011 Omnibus Incentive Plan (the "Plan"), authorizing the granting of equity awards to certain of GenVec's officers, employees, and directors.  Am. Compl. ¶¶ 1–2, 27.  On April 29, 2011, the Board filed a Schedule 14A Proxy Statement (the "2011 Proxy Statement") with the Securities and Exchange Commission ("SEC") with respect to an upcoming shareholder meeting on June 15, 2011 (the

---

Schneebaum's Motion to Dismiss and Joinder with GenVec's Motion to Dismiss (the "Individual Defs.' Mot. to Dismiss"), ECF No. 34, and supporting Memorandum ("Individual Defs.' Mem."), ECF No. 34-1; Plaintiff's Opposition, ECF No. 36, and the Individual Defendants' Reply, ECF No. 39.

"2011 Meeting"). 2011 Proxy Statement 1, Am. Compl. Ex. B, ECF No. 11-2. Among the

proposals in the 2011 Proxy Statement was a shareholder vote on the adoption of the Plan; the

2011 Proxy Statement explained that "[a]n affirmative vote of a majority of the shares present or

represented by proxy and entitled to vote on such matter at the Annual Meeting is required for

approval of the adoption of the 2011 Omnibus Incentive Plan." *Id.* at 33.

> According to the 2011 Proxy Statement:
>
> [t]he maximum number of shares of Common Stock subject to options or stock
> appreciation rights ["SARs"] that can be granted under the 2011 Omnibus
> Incentive Plan in a calendar year to any person is 25,000 [the "25,000 Limit"].
> The maximum number of shares of Common Stock that can be granted under the
> 2011 Omnibus Incentive Plan to any person, other than pursuant to an option or
> stock appreciation right, is 12,500 per year [the "12,500 Limit and, together with
> the 25,000 Limit, the "Individual Limits"].

*Id.* at 38. In addition, the 2011 Proxy Statement stated that the aggregate number of shares

available for issuance under the Plan was 867,197 as of March 31, 2011. *Id.* at 33.

The 2011 Proxy Statement also said, "The Board of Directors may terminate or amend

the Plan at any time and for any reason. . . . Amendments will be submitted for stockholder

approval to the extent required by the Internal Revenue Code or other applicable laws, rules or

regulations." *Id.* at 34. It also explained that "[t]he 2011 Omnibus Incentive Plan is designed to

permit the Committee to grant awards that qualify as performance-based for purposes of

satisfying the conditions of [Internal Revenue Code] Section 162(m)," which required, *inter alia*,

that "the material terms under which the compensation is to be paid must be disclosed to, and

subsequently approved by, stockholders of the Company in a separate vote before payment is

made." *Id.* at 36.

On June 17, 2011, following approval of the Plan at the 2011 Meeting, the Board filed a

copy of the Plan with the SEC as an exhibit to a Form 8-K. Am. Compl. ¶ 27; Plan, Am. Compl.

Ex. A, ECF No. 11-1.   The version of the Plan filed with the SEC comports with the

representations made in the 2011 Proxy Statement.

Section 6.2 of the Plan provides:

(a) the maximum number of shares of Stock subject to Options or SARs that may
be granted under the Plan in a calendar year to any person eligible for an Award
under Section 6 is 25,000 shares;
(b) the maximum number of shares of Stock that may be granted under the Plan,
other than pursuant to Options or SARs, in a calendar year to any person eligible
for an Award under Section 6 is 12,500 shares.

Under the terms of the plan, the "Effective Date" is "June 15, 2011, the date on

which the Plan was approved by the Company's shareholders."   Plan § 2.19.   The Plan

also provides that:

The Board may, at any time and from time to time, amend, suspend, or terminate
the Plan as to any shares of Stock as to which Awards have not been made.   The
effectiveness of any amendment to the Plan shall be contingent on approval of
such amendment by the Company's shareholders to the extent provided by the
Board or required by Applicable Laws (including the rules of any Stock Exchange
on which the Stock is then listed) . . . .

*Id.* § 5.3.

"Applicable Laws" is a defined term and includes:

the legal requirements relating to the Plan and the Awards under (a) applicable
provisions of the corporate, securities, tax and other laws, rules, regulations and
government orders of any jurisdiction applicable to the Awards granted to
residents therein and (b) the rules of any Stock Exchange on which the Stock is
listed.

*Id.* § 2.2.

On January 18, 2012,[2] the Compensation Committee—composed of Defendants Marc R. Schneebaum, Wayne T. Hockmeyer, William N. Kelley, and Edward M. Connor, Jr.—issued awards under the Plan (the "2012 Awards") as follows:

- 150,000 shares to then-President and CEO Paul H. Fisher;[3]

- 60,000 shares to Douglas J. Swirsky, then serving as an officer;

- 75,000 shares to Douglas E. Brough, Chief Science Officer; and

- 60,000 shares to Bryan T. Butman, Senior Vice President, Development.

Am. Compl. ¶¶ 13, 15, 24–25, 35.  Each of these awards exceeded the 25,000 Limit.  Am. Compl. ¶ 36.

On May 31, 2012, GenVec filed a 14A Proxy Statement (the "2012 Proxy Statement") with the SEC with respect to its July 11, 2012 shareholder meeting (the "2012 Meeting").  2012 Proxy Statement, Am. Compl. Ex. C, ECF No. 11-3.  Among the proposals on the 2012 Proxy Statement was a proposal to increase the aggregate number of shares available under the Plan by 640,000 shares of common stock, increasing the number of total shares available from 531,750 to 1,171,750.  2012 Proxy Statement 31.  The proposal noted that shareholder approval was required under NASDAQ Rules.  *Id.*  In summarizing the terms of the Plan, the 2012 Proxy Statement included the same Individual Limits as were reported in the 2011 Proxy Statement. *Id.* at 36.

---

[2] It appears from the Amended Complaint that on this date, the Board consisted of Defendants Paul H. Fischer, Marc R. Scheenbaum, Wayne T. Hockmeyer, William N. Kelley, Zola P. Horovitz, Edward M. Connor, Jr., Adel A.F. Mahmoud, and Kevin F. Rooney (collectively, the "2011 Board").

[3] Fisher's award was forfeited when he left the company in May 2012.  Am. Compl. ¶ 35 n.1.

On January 22, 2013,[4] the Compensation Committee—composed of Schneebaum, Hockmeyer, Kelley, and Connor—issued awards under the Plan (the "January 2013 Awards") as follows:

- 200,000 shares to Swirsky;

- 125,000 shares to Brough; and

- 75,000 shares to Butman.

Am. Compl. ¶ 41. The next day, then-President and CEO Cynthia Collins was awarded 200,000 shares. *Id.* ¶ 41 Each of these awards exceeded the 25,000 Limit. *Id.* ¶ 43.

On May 31, 2012, GenVec filed a 14A Proxy Statement (the "2012 Proxy Statement") with the SEC with respect to its July 11, 2012 shareholder meeting (the "2012 Meeting"). 2012 Proxy Statement, Am. Compl. Ex. C, ECF No. 11-3. Among the proposals on the 2012 Proxy Statement was a proposal to increase the aggregate number of shares available under the Plan by 640,000 shares of common stock, increasing the number of total shares available from 531,750 to 1,171,750. 2012 Proxy Statement 31. The proposal noted that shareholder approval was required under NASDAQ Rules. *Id.* In summarizing the terms of the Plan, the 2012 Proxy Statement included the same Individual Limits as were reported in the 2011 Proxy Statement. *Id.* at 36. The amendment to the Plan was approved. Am Compl. ¶ 40.

On September 3, 2013,[5] the Compensation Committee—composed of Schneebaum, Hockmeyer, and Kelley—issued awards under the Plan (the "September 2013 Awards" and, collectively with the 2012 Awards and the January 2013 Awards, the "Awards") as follows:

---

[4] It appears from the Amended Complaint that on this date, the Board consisted of Defendants Cynthia Collins, Scheenbaum, Hockmeyer, Kelley, Horovitz, Connor, Mahmoud, and Rooney (collectively, the "January 2013 Board").

- 75,000 shares of restricted stock to Schneebaum;

- 75,000 shares of restricted stock to Hockmeyer;

- 75,000 shares of restricted stock to Kelley;

- 75,000 shares to outside director Zola P. Horovitz;

- 200,000 shares of restricted stock to current-President and CEO Swirsky;

- 125,000 shares of restricted stock to Brough; and

- 75,000 shares of restricted stock to Butman.

*Id.* ¶ 42. Each of these awards exceeded the 12,500 limit for restricted stock awards. Am. Compl. ¶ 43.

On October 16, 2013, the Board filed a Schedule 14A Proxy Statement (the "2013 Proxy Statement") with the SEC with respect to its November 22, 2013 shareholder meeting (the "2013 Meeting"). 2013 Proxy Statement, Am. Compl. Ex. E, ECF No. 11-5. The 2013 Proxy Statement also contained a proposal to increase the aggregate number of shares available under the plan, this time by 500,000 shares, from 559,914 to 1,059,914. *Id.* at 21. The 2013 Proxy Statement also sought the re-election of directors Kelley and Horovitz. *Id.* at 4.

Unlike the prior proxy statements, the 2013 Proxy Statement summarizes the terms of the Plan as follows:

> The maximum number of shares of Common Stock subject to options or stock appreciation rights that can be granted under the 2011 Plan in a calendar year to any person is 250,000 [the "250,000 Limit"]. The maximum number of shares of Common Stock that can be granted under the 2011 Plan to any person, other than pursuant to an option or stock appreciation right, is 120,500 per year [the

---

[5] It appears from the Amended Complaint that on this date, the Board consisted of Defendants Swirsky, Scheenbaum, Hockmeyer, Kelley, and Horovitz, (collectively, the "September 2013 Board").

"120,500 Limit" and, together with the 250,000 Limit, the "Higher Individual Limits"].

*Id.* at 26.  The 2013 Proxy also indicates that stockholder approval is necessary, *inter alia*, for awards under the plan to qualify for benefits under Section 162(m) of the Internal Revenue Code. *Id.* at 21.  Attached to the 2013 Proxy Statement at Annex A was a version of the Plan also containing the Higher Individual Limits, and purporting to have been adopted by the Board on April 21, 2011 and approved by the shareholders on June 15, 2011.  Am. Compl. ¶ 49.  Nowhere in the 2013 Proxy Statement does it disclose that the version of the Plan included therein does not match the version approved in 2011 or the version that has been described on prior proxy statements.

### B.  Plaintiff's Amended Complaint and Preliminary Injunction Motion

On November 1, 2013, approximately three weeks before the 2013 Meeting, Plaintiff filed his Amended Complaint in this Court, setting fourth four counts: (I) a derivative claim for Breach of Fiduciary Duty against all Defendants; (II) a derivative claim for Unjust Enrichment against Defendants Swirsky, Brough, Butman, Schneebaum, Hockmeyer, Horovitz, and Kelley (the "Recipient Defendants"); (III) a derivative claim for Waste of Corporate Assets against Defendants Schneebaum, Rooney, Fischer, Hockmeyer, Kelley, Horovitz, Connor, Mahmoud, Collins, and Swirsky (the "Director Defendants"); and (IV) a direct claim for Breach of Fiduciary Duty of Candor against Defendants Schneebaum, Hockmeyer, Kelley, Horovitz, Swirsky, and Stefan F. Loren (the "Current Board").

Coincident with the Amended Complaint, Plaintiff also filed a motion for a preliminary injunction, seeking to enjoin the 2013 Meeting based on "material omissions and false and misleading statements" in the 2013 Proxy Statement.  Pl.'s Mot. for Prelim. Inj., ECF No. 12. Following briefing, a hearing was held before now-retired Judge Alexander Williams on

November 15, 2013, and he issued a Memorandum Opinion and Order denying the motion for a preliminary injunction on November 20, 2013.  Mem. Op., ECF No. 23; Order, ECF No. 24.

In his Memorandum Opinion, Judge Williams found that Plaintiff did not have a substantial likelihood of prevailing on the merits, Mem Op. at 8 (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (1998); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009)), because (i) the Board had authority to amend the Plan, diminishing the likelihood that its failure to abide by its terms would be significant to shareholders; (ii) the Awards did not exceed the aggregate limits and therefore did not unauthorizedly dilute GenVec shares and could have been allowed by the Board without shareholder approval under NASDAQ Rules; and (iii) Plaintiff had not come forward with any authority showing that prior awards in excess of the Individual Limits would have assumed actual significance in the minds of shareholders voting on an increase to aggregate limits or the election of directors.  Mem. Op. 9–11.  Judge Williams also found no likelihood of irreparable harm because the omissions in the 2013 Proxy Statement were not material and, in any event, he was "not convinced that [the Court] will be unable to afford adequate relief to Plaintiff, including, for example, rescission of improper awards, in the absence of an injunction."  *Id.* at 11.  Finally, he found that both the balance of equities and the public interest weighed against an injunction that would create uncertainty and disruption for GenVec, which already was experiencing significant financial distress.  *Id.* at 11–12.

### C.  Motions to Dismiss and Current Posture

On February 10, 2014, motions to dismiss were filed by GenVec, GenVec Mot. to Dismiss, ECF No. 35, and Defendants Horovitz, Fischer, Hockmeyer, Kelley, Rooney, and Schneebaum (the "Individual Defendants"), Individual Defs.' Mot. to Dismiss, ECF No. 34,

together with accompanying Memoranda (the "GenVec Mem." and "Individual Defs.' Mem.," respectively), ECF Nos. 35-1 & 34.1.

GenVec's Motion to Dismiss seeks to dismiss the Amended Complaint under Fed. R. Civ. P. 23.1 for failure to make a demand of the Board before bringing this derivative suit on behalf of the Company.  GenVec Mem. 1.  Although GenVec makes several arguments that respond to the allegations in the Complaint, it also relies heavily on its alternative view of the facts underlying this case.  *See* GenVec Mem. 7.  According to GenVec, the Higher Limits properly were approved by the Board and it was only "owing to an error" that the 2011 and 2012 Proxy Statements "misstated the per-participant limits" such that the shareholders never were clearly informed of the discrepancy.  *Id.*  Because this case is before me on a motion to dismiss, however, I may not consider GenVec's alternative view of the facts, but must accept the "well-pleaded, nonconclusory factual allegations in the complaint to be true."  *Aziz*, 658 F.3d at 392.  The Individual Defendants' Motion to Dismiss seeks to dismiss each of Counts I to IV pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

Plaintiff has filed a consolidated Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 36, and both GenVec, GenVec's Reply, ECF No. 40, and the Individual Defendants, Individual Defs.' Reply, ECF No. 39, have replied, and both motions to dismiss now are before me.  Having reviewed the filings, I find that a hearing is not required.  Loc. R. 105.6

Although the Amended Complaint added several defendants who had not been served with the original Complaint, the docket does not reflect that the new defendants ever were served.  On June 12, 2014, Plaintiff advised the Court that, in fact, Defendants Brough, Butman, Collins, Connor, Loren, Mahmoud, and Swirsky (the "Unserved Defendants") never had been

served "[d]ue to an oversight," and requesting the issuance of new summonses. Pl.'s Letter of June 12, 2014, ECF No. 41. In a Letter Order dated June 16, 2014, I found that Plaintiff had not shown cause why he had failed timely to serve the Unserved Defendants, and denied the request for the issuance of new summonses. Letter Order, ECF No. 43.

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the

complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011). However, a court may not consider matter outside of the pleadings unless it treats the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

### B. Rule 9(b)

Cases involving allegations of fraud or mistake must meet the "heightened pleading standard under Rule 9(b)." *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013).

> Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such allegations [of fraud] typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form. The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all of the facts are learned only after discovery; and to safeguard the defendant's reputation.

*Id.* (citations omitted); *see Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, 2013 WL 1694549, at *9 (4th Cir. Apr. 19, 2013).

III.   **DISCUSSION**

A.  **Demand Futility**

Fed. R. Civ. P. 23.1(b)(3) requires a plaintiff bringing a derivative action to "state with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."  "On its face, Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings.  Indeed, as a rule of procedure issued pursuant to the Rules Enabling Act, Rule 23.1 cannot be understood to 'abridge, enlarge or modify any substantive right.'"  *Kamen v. Kemper Fin. Servs, Inc.*, 500 U.S. 90, 96 (1991) (quoting 28 U.S.C. § 2072(b)).  Accordingly, in a suit involving a Delaware corporation, Delaware law determines whether a shareholder has made adequate efforts to obtain board action—the so-called "demand requirement"—or whether the demand requirement is excused altogether. *See Innovative Therapies, Inc. v. Meents*, No. DKC-12-3309, 2013 WL 2919983, at *6 (D. Md. June 12, 2013).

GenVec argues that Plaintiff's derivative claims should be dismissed pursuant to Fed. R. Civ. P. 23.1 because he did not make a pre-suit demand on the Board before filing his derivative claims.  GenVec Mem. 11.  Plaintiff has alleged that demand would be futile in this case because the board was an interested entity and its actions could not have been a valid exercise of business judgment, and accordingly, that demand is excused.  *See*  Pl.'s Opp'n 6.

 "A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (citing 8 Del. C. § 141(a)).  Because a derivative suit allows a shareholder

to initiate action on behalf of a corporation and correspondingly impinges upon director control, such a suit may not be brought unless the shareholder first makes a demand upon the board with respect to his claim or, in the alternative, demonstrates that it would be futile to do so. *Id.* at 811--–12.

*Aronson v. Lewis* provides that demand is excused where, "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise a product of a valid exercise of business judgment." 473 A.2d at 814. Where, as here, the composition of the Board has changed over time, a court considers the futility of a demand with respect to the board at the time the complaint is filed—that is, the board that would address a putative demand. *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993). Because the claims in the Amended Complaint were not raised in the original Complaint, the question of demand futility should be addressed with respect to the Current Board. *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006).

With respect to the first *Aronson* prong, Plaintiffs allege that a majority of the Current Board—Defendants Schneebaum, Hockmeyer, Kelley, Horovitz, and Swirsky (the "Recipient Directors")—is interested because "each received compensation that is being challenged in this lawsuit." Am. Compl. ¶ 68. Swirsky received shares under the 2012 Award, the January 2013 Award, and the September 2013 Award, Am. Compl. ¶¶ 35, 41–42; Schneebaum, Hockmeyer, Kelley, and Horovitz received shares under the September 2013 Awards, Am. Compl. ¶ 42. This is not a case in which the allegedly interested directors merely were potential beneficiaries of a plan. *See Seinfeld v. Slager*, No. 6464-VCG, 2012 WL 2501105, at *14 (Del. Ch. June 29, 2012). And, insofar as Plaintiffs allege that the Awards exceeded the Individual Limits in the approved version of the Plan, this also is not a case in which "stock options accrued to these

directors under the terms of an established option plan with sufficiently defined terms." *In re 3COM Corp.*, No. 16721, 1999 WL 1009210, at *3 (Del. Ch. Oct. 25, 1999). To the contrary, the interests of the Recipient Directors is clear: a finding that the Awards were improper could require them to disgorge any improperly received shares, creating at least a reasonable doubt that the Recipient Directors are disinterested. *See Conrad v. Blank*, 940 A.2d 29, 38 (Del. Ch. 2007) (finding directors "have a strong financial incentive to maintain the status quo by not authorizing any corrective action that would . . . cause them to disgorge improperly obtained profits"). And because I cannot see any principled way that the September 2013 Awards could be upheld if the earlier Awards were improper, I find that the Recipient Directors are interested with respect to those transactions as well under the first *Aronson* prong.

Demand also may be excused under the second prong of *Aronson*. Plaintiff has alleged that, because the Awards exceeded the limits of the Plan, they could not have been a valid, good faith exercise of business judgment. Am. Compl. ¶ 69. Defendants' primary argument to the contrary appears to be a simple refusal to accept as pleaded the facts in the Amended Complaint that the terms of the Plan adopted by the Board were not those approved by the shareholders. *See* GenVec Mem. 18. But even if I were not constrained to credit the allegations in the complaint, it is apparent that the Plan, by its terms, required shareholder approval, Plan ¶ 2.19, and that the approved Plan contained the lower Individual Limits, Plan ¶ 6.2(a)–(b). The alleged violation of an express provision of the Plan, standing alone, is sufficient to raise a reasonable doubt as to whether the action could have been a valid exercise of business judgment. *See Pfeiffer v. Leedle*, No. 7831-VCP, 2013 WL 5988416, at *9 (Del. Ch. Nov. 8, 2013); *Sanders v. Wang*, No. 16640, 1999 WL 1044880, at *5 (Del. Ch. Nov. 8, 1999). Although Defendants ultimately may convince me otherwise, or may demonstrate that their actions in fact were not

knowing and intentional but the result of a good-faith mistake, doing so would involve factual determinations that are premature at this stage.

Defendants also rely on *Freedman v. Redstone*, No. 12-1052-SLR, 2013 WL 3753426, at *9 (D. Del. July 16, 2013), for the proposition that, as a legal matter, it is not clear that the Board could have violated the Individual Limits because it had power to alter the terms of the Plan at any time.  *See* GenVec Mem. 19.  *Freedman* dealt with a compensation plan that called on the use of objective factors in issuing awards, but allowed for awards to be reduced at the discretion of the compensation committee.  2013 WL 3753426, at *3.  Because the Board could use subjective factors for some purposes but not others, the District of Delaware found that it was not clear that the improper use of subjective factors necessarily was knowing and intentional.  *Id.* at *9.  It is far from clear that *Freedman* is at all on point here, insofar as the clear terms of the Plan did not allow the Board to issue *any* Awards above the Individual Limits.  *See* Plan ¶ 6.2(a)–(b). "One way that a plaintiff can allege sufficiently a knowing and deliberate failure on the part of a board is by demonstrating that the alleged action was a clear and unambiguous violation of the company's stock incentive plan."  *Pfeffer*, 2013 WL 5988416, at *5.  And even assuming that the Board had plenary authority to alter the Individual Limits,[6] there is no indication that they sought

---

[6] This proposition is not entirely clear.  The authority of the Board to alter the Plan was circumscribed by "Applicable Laws," *see* Plan § 5.2, which included certain provisions of tax law, *id.* ¶ 2.2.  "The 2011 Omnibus Incentive Plan is designed to permit the Committee to grant awards that qualify as performance-based for purposes of satisfying the conditions of [Internal Revenue Code] Section 162(m)," which requires a shareholder vote on any material terms.  2011 Proxy Statement 36.  The relevant regulations require that "the plan under which the option or right is granted states the maximum number of shares with respect to which options or rights may be granted during a specified period to any employee."  26 C.F.R. § 1.162-27(e)(2)(vi)(A) And according to those regulations, "material terms include . . . either the maximum amount of compensation that could be paid to any employee or the formula used to calculate the amount of compensation to be paid to the employee."  26 C.F.R. § 1.162-27(e)(4)(i).  Even crediting the Individual Defendants' argument that compliance with Section 162(m) was not a core purpose of

to exercise that authority.  At the time that the Board acted, it was subject to the Individual Limits of the shareholder-approved Plan.

Because I find that Plaintiff has shown that demand is excused with respect to the Awards themselves, I need not consider whether the omissions in the 2013 Proxy Statement, standing alone, provide an independent basis for demand futility.  *See* Am. Compl. ¶ 70. Because Plaintiff has raised a reasonable doubt that a majority of the Board is interested in the Awards and that the Awards could not have been a valid exercise of business judgment, GenVec's motion to dismiss must be denied.

### B.  Individual Defendants' Motion to Dismiss

The Individual Defendants also have sought to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) and 9(b).[7]  *See* Indiv. Defs.' Mot. to Dismiss.  Because Plaintiff's claims for unjust enrichment and corporate rest heavily on his allegations of breaches of fiduciary duty, I will consider the fiduciary duty claims first, and then turn to Plaintiff's remaining claims

### 1.  Breach of Fiduciary Duty—Count I

Plaintiff's primary claim is that, by issuing awards in excess of the Plan's individual limits, the Board breached its fiduciary duties.  Am. Compl. ¶¶ 83–89.  "A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty."  *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010).

---

the Plan, Individual Defs.' Reply 4–6, it is apparent that the Plan was intended to so comply, and this may well have cabined the discretion of the Board.

[7] The Individual Defendants appear to argue that the entirety of Plaintiff's complaint fails to comply with the heightened pleading standard of Fed. R. Civ. P. 9(b).  *See* Individual Defs.' Mem. 16–19.  Because Rule 9(b) only applies to allegations of "fraud or mistake," and because the only count that arguably contains such allegation is Count IV alleging breach of the duty of candor, I will consider Rule 9(b) with respect to that Count only.

As the Delaware Court of Chancery has noted in *Pfeiffer*, "[t]he standard under [Delaware Court of Chancery] Rule 12(b)(6) is less stringent than that under Rule 23.1  'Thus, where plaintiff alleges particularized facts sufficient to prove demand futility under the second prong of *Aronson*, that plaintiff *a fortiori* rebuts the business judgment rule for the purpose of surviving a motion to dismiss pursuant to Rule 12(b)(6).'"  *Pfeiffer*, 2013 WL 5988416, at *9 (quoting *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007)).  Accordingly, Plaintiff has stated a valid claim of breach of fiduciary duty.

Like GenVec, the Individual Defendants rest their opposition on a dogged refusal to address the allegations of the Amended Complaint or to acknowledge the clear language of the Plan as adopted by the shareholders.   Individual Defs.' Mem. 20.   As explained above, shareholder approval of the Plan was a prerequisite to its adoption, and it is apparent that the shareholders never approved the version on which Defendants rely.  Nor, at this early stage, am I prepared to accept the argument that the Board's authority to alter the individual limits under the Plan relieved it from any obligation to hew to its terms.  *See* Individual Defs.' Mem. 20–21. Even accepting that the Board's authorization to alter the terms of the Plan was "[m]ore than a loosely worded clause implying flexibility to carry out the logistics of administration," *Sanders*, 1999 WL 1044880, at *9; Individual Defs.' Reply 12–13—and assuming that such authority is not circumscribed by Section 162(m), *see supra*—there is no indication in the materials before me that are appropriate for review with respect to a motion to dismiss that the Board ever exercised its authority to alter the terms of the plan.  Accordingly, the claim that the directors breached their fiduciary duties by approving awards in excess of the Individual Limits must survive dismissal.

### 2.  Breach of Duty of Candor—Count IV

Plaintiff also brings a direct claim against the Current Board for alleged misrepresentations contained in the 2013 Proxy Statement.  Am. Compl. ¶¶ 100–04.  It is well-settled that "'directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action.'" *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1277 (Del. 1994) (quoting *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992)).  To be material, information need not rise to the level that would make a shareholder change her vote; it is sufficient that "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote" such "that the disclosure of the omitted fact would have been viewed by the reasonable investor as having altered the 'total mix' of information made available." *TCS Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448 (1976).

The Individual Defendants argue that "Judge Williams held that a grant that exceeded the per-participant limits was immaterial [to the] stockholders because the stockholders granted the board the unilateral authority under the Incentive Plan to amend the per-participant limits." Individual Defs.' Mem. 17.  They are mistaken.  He ruled only that, at the preliminary injunction stage, he was "not convinced . . . that the identified omissions are material in the context of the November 22, 2013 shareholder vote" such that a preliminary injunction was appropriate.  *See* Mem. Op. 11.  He expressly left open the possibility that "Plaintiff may ultimately succeed on the merits." *Id.*  And at the motion to dismiss stage, the question before me is not whether I am convinced that the information withheld was material, but whether Plaintiff adequately has so alleged. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

It is apparent that, in 2011, the shareholders were presented with and approved a version of the Plan containing the lower Individual Limits.  *See* 2011 Proxy Statement 38.  And it also is clear that in 2013, without any explanation, the same plan was characterized—inaccurately—as having the Higher Individual Limits.  2013 Proxy Statement 26.  This statement indisputably is false insofar as the shareholders never had approved the Higher Individual Limits, and it appears that the Board never disclosed the discrepancy to the shareholders; the only question is whether the omission is material.  Although the motion for a preliminary injunction required this Court to rule on certain factual disputes, the Supreme Court has explained that an ultimate determination of materiality rarely will be appropriate for the Court to make as a matter of law:

> The issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts. In considering whether summary judgment on the issue is appropriate, we must bear in mind that the underlying objective facts, which will often be free from dispute, are merely the starting point for the ultimate determination of materiality. The determination requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact.

*TCS Indus.*, 426 U.S. at 450.[8]  At this early stage, I cannot find that the misrepresentations in the proxy statements are immaterial as a matter of law.

I also find that, assuming that Count IV sounds in fraud or mistake, Plaintiff has satisfied the requirements of Rule 9(b). Rule 9(b) requires only that a plaintiff "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'"  *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 298, 313–14 (D. Md. 2000) (quoting *Windsor Assocs. v. Greenfield*,

---

[8] The Individual Defendants also have argued that there is no remedy for any breach of the duty of candor.  Individual Defs.' Reply 18.  Insofar as this argument is raised for the first time in a reply brief, however, it is not properly presented and I decline to consider it here.

564 F. Supp. 273, 280 (D. Md. 1983) (emendation in original)).  Plaintiff has alleged that statements in the 2013 Proxy Statement were misleading insofar as they misrepresented the Individual Limits under the Plan and obscured past Awards that exceeded the Individual Limits in order to avoid liability for their conduct.  Am. Compl. ¶¶ 46–52.  And although the Individual Defendants argue that Plaintiff has not accounted for each individual's "particular participation in any particular act" or the changes in Board composition since 2011, Individual Defs.' Mem. 16–17, in specifying omissions in the 2013 Proxy Statement, the Amended Complaint clearly identifies the Current Board as the source of any misrepresentations or omissions.  This is more than sufficient to satisfy Rule 9(b).  Count IV is sufficient to survive dismissal.

### 3.  Unjust Enrichment—Count II

Under Delaware law, "'[u]njust enrichment is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."'"  *Shock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (quoting 66 Am. Jur. 2d, Restitution and Implied Contracts § 3).  "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of remedy provided by law."  *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

The Individual Defendants do not (and, it would seem, could not) dispute that the Awards enriched their recipients.  However, the Individual Defendants dispute that GenVec was impoverished by the grants because there is no "suggestion that the grants reflected something other than fair compensation."  Individual Defs.' Mem. 13.  Defendants' argument relies primarily on *Triton Construction Co., Inc. v. Eastern Shore Electrical Services, Inc.*, No. 3290-VCP, 2009 WL 1387115, at *24 (Del. Ch. May 18, 2009), but that case readily is distinguishable

from the instant case: it alleged unjust enrichment based on payments under a contract and failed to show that the recipient had not fulfilled his end of the contract by performing his work adequately, *id.*   But this is not a case where an unjust enrichment allegation rests on the claim that a defendant has not earned an otherwise proper salary.   *See, e.g.*, *In re Capital One Derivative S'holder Litig.*, 952 F. Supp. 2d 770, 783 (E.D. Va. 2013) (dismissing unjust enrichment claim based on unrelated wrongdoing); *Haberland v. Buckley*, 896 F. Supp. 2d 410, 431 (E.D.N.C. 2012) (dismissing unjust enrichment claim where there was no allegation that defendants' compensation was improper, but only that it was disproportionately high for their performance).

To the contrary, by raising a reasonable doubt that the Awards were a valid exercise of business judgment, Plaintiff has alleged that the Recipient Defendants were not entitled to the Awards that they received and were unjustly enriched.   *See Pfeiffer*, 2013 WL 5988416, at *10. And in any event, "the emphasis on 'impoverishment' is not entirely warranted because restitution may be awarded based solely on the benefit conferred upon the defendant, even in the absence of an impoverishment suffered by the plaintiff."   *Metcap Sec. LLC v. Pearl Senior Care, Inc.*, C.A. No. 2129-VCN, 2009 WL 513756, at *5 n.26 (Del. Ch. Feb. 27, 2009); *see also Nemec*, 991 A.2d at 1130 n.37 (citing *Metcap* approvingly).   Accordingly, Plaintiff has stated a valid claim for unjust enrichment and Count II cannot be dismissed at this time.

### 4.  Count III—Corporate Waste

Finally, the Individual Defendants seek to dismiss Plaintiff's claim for waste of corporate assets.   "To state a claim for waste, a stockholder must allege, with particularity, that the board authorized action that no reasonable person would consider fair."   *Freedman v. Adams*, 58 A.3d 414, 417 (Del. 2013).   "A claim of waste will arise only in the rare, 'unconscionable case where

directors irrationally squander or give away corporate assets.'" *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) (quoting *Brehm v. Eisner*, 746 A.2d 255, 263 (Del. 2000)). "If . . . there is *any* substantial consideration received by the corporation, and if there is a *good faith judgment* that in the circumstances the transaction is worthwhile, there should be no finding of waste . . . ." *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997).

Plaintiff alleges that all of the recipients of Awards under the Plan were directors or officers of GenVec. Am. Compl. ¶ 26. It therefore is apparent that all provided services to GenVec, and Plaintiff has not alleged otherwise. Rather, Plaintiff relies on the conclusory allegation that, "[b]y granting Recipient Defendants awards in excess of the amount allowed under the Plan in fiscal years 2012 and 2013, the Director Defendants granted awards that no director of ordinary sound business judgment would award, so as to constitute waste." Am. Compl. ¶ 98. This allegation is wholly conclusory and cannot support a claim for waste. Accordingly, Count III of the Amended Complaint must be dismissed.

### C. Unserved Defendants

Fed. R. Civ. P. 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Plaintiff has not served Defendants Brough, Butman, Collins, Connor, Loren, Mahmoud, and Swirsky, and the time to do so under Fed. R. Civ. P. 4(m) passed months ago. *See* Letter Order 1. Although I found that Plaintiff's oversight did not constitute good cause to extend the time for service, I did not dismiss the Unserved Defendants at that time and, in fact, denied Plaintiff's request for an extension without prejudice to refiling it with a valid showing of cause.

*Id.* at 2.  It now is over two months later and Plaintiff has not attempted to show cause why he has not served the Unserved Defendants.  Accordingly, if Plaintiff cannot show such cause within fourteen days of this Memorandum Opinion and accompanying Order, the Unserved Defendants will be dismissed.

## IV.    PROCEDURAL MATTERS

This Memorandum Opinion and Order will be followed shortly by the entry of a scheduling order, as required by Fed. R. Civ. P. 16(b), as well as my standard discovery order, which places strict limitations on the scope and volume of discovery.  However, certain features of this case seem to counsel in favor of more stringent limitations, in order to focus this case on the issues and ensure the "just, speedy, and inexpensive determination" of this action.  *See* Fed. R. Civ. P. 1.

It is not apparent that any discovery occurred with respect to the earlier preliminary injunction motion.  However, many, if not most, of the relevant issues appear to be undisputed and it is not clear whether this case—which, in essence, seeks only to claw back certain awards of stock in a struggling company—has significant monetary value in any event.  Accordingly, discovery will be allowed only insofar as it is proportional to what is at issue in this case.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) (requiring the court to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit").  I will discuss the details of how I intend to manage discovery in this matter with the parties on a conference call pursuant to Fed. R. Civ. P. 16.

Second, this case strikes me as one that may be unlikely to proceed to trial.  Because only derivative claims remain, a favorable verdict for Plaintiff would appear to yield him only marginal, if any, direct benefit.   Accordingly, I encourage the parties to give serious

consideration to an early settlement conference with a Magistrate Judge of this Court prior to undertaking significant discovery.  This will allow the parties to attempt to work out their competing positions before running up unnecessary expenses, freeing up resources that otherwise might be spent on discovery and motions practice.

Third, no further motions of any type may be filed in this case without first requesting a pre-motion conference with the Court.  The parties' briefing on the motions to dismiss was unduly lengthy, argumentative even as to undisputed or undisputable matters, and in some instances served to obfuscate rather than to illuminate the issues at play in this case.

Accordingly, before any motions may be filed, the party seeking to file first must file a request for a pre-motion conference, in the form of an informal letter not to exceed three single-spaced pages, specifying the motion sought to be filed and providing a brief summary of the principal arguments that it will contain, including particularized legal support; no response will be necessary or permitted.  The letter should provide sufficient information to demonstrate that the motion contains colorable, good-faith arguments and is not brought for any improper purpose or to delay.  *See* Fed. R. Civ. P. 11(b).  Upon receipt, I promptly will schedule a pre-motion conference.  The filing of a request for a pre-motion conference within the deadline for filing the relevant motion will serve to toll the deadline to file a full motion until fifteen days after the request is resolved.  Further, to facilitate my review and resolution of any motions that are filed, any brief or memorandum in support of or opposition to a motion that is in excess of twenty-five pages shall include a summary of the principal arguments and authority and key supporting facts. The summary will be limited to one page per ten pages of memorandum.

Finally, although it is somewhat premature at this point, in the event that this case should proceed to summary judgment, I will provide guidance to the parties as to how to submit a joint

statement of disputed and undisputed facts, supported by a single set of exhibits.  This will prevent the filing of voluminous, duplicative, and unnecessary exhibits that serve to add to the Court's workload without aiding it in deciding the issues raised by the parties.

All of these matters will be discussed in greater detail on the Rule 16 conference call that will be scheduled shortly.

## V.    CONCLUSION

For the aforementioned reasons, Defendant GenVec's Motion to Dismiss is DENIED; the Individual Defendants' Motion to Dismiss is GRANTED in part and DENIED in part; and Defendants SHALL ANSWER the Amended Complaint within fourteen days of this Memorandum Opinion and Order, pursuant to Fed. R. Civ. P. 12(a)(4)(A).

Within fourteen days of this Memorandum Opinion and Order, Plaintiff SHALL SHOW CAUSE why the Unserved Defendants should not be dismissed pursuant to Fed. R. Civ. P. 4(m).

Discovery shall be controlled so as to remain proportional to the issues in this case and, with the exception of Plaintiff's Rule 26(a)(1)(A)(iii) disclosure, shall not commence until after a Rule 16 call is held.  The parties SHALL CONSIDER whether an early settlement conference before a Magistrate Judge would be beneficial.

No motions shall be filed without first seeking a pre-motion conference, as described above.

A separate order will issue.

Dated: September 5, 2014                      _____/S/_____
                                             Paul W. Grimm
                                             United States District Judge

dsy